## W. J. BAKER ET AL. v. J. H. MIMS.

Delivered October 10, 1896.

**1. Trespass to Land—Measure of Damages.**

In an action for damages for entering plaintiff's pasture and driving into such pasture a herd of cattle, the court charged that the measure of damages for the destruction of the grass and turf, and for injury to watering troughs and fences, was the diminished value of the premises. Held, correct, and that an instruction that the measure of damages for the injury to the troughs and fences was the cost of repairing the same was properly refused.

**2. Measure of Damages—Injury to Live Stock.**

The measure of damages for injuries by defendant to plaintiff's mares, causing them to slink their foals, is the reduced value of the mares, and not the value of the colts so lost.

APPEAL from Howard.     Tried below before Hon. WM. KENNEDY.

*Cowan & Fisher* and *T. J. Hefner*, for appellants.—1.   The measure of damage to land is the difference between the market value of the land before the injury, and its market value after the injury, while the measure of damages to the tank and fence is such sum as will repair and place same in as good condition as before the injury.   Field on Dam., sec. 734; 3 Suth. on Dam., 372; Railway v. Schofield, 72 Texas, 499; Railway v. Seymour, 63 Texas, 346; Railway v. Bayliss, 62 Texas, 571; Railway v. Ware, 67 Texas, 637.

2.    The correct measure of damages in all cases where a mare, by reason of the wrongful acts of defendant, is caused to lose her foal, is the market value of the mare before and after the injury.   Slinked foals have no market or legal value.   Railway v. Fagan, 72 Texas, 133; Railway v. Keith, 74 Texas, 289; Galveston Wharf Co. v. McYoung, 2 Willson's C. C., sec. 642.

*H. E. Crowley* and *R. H. Zane*, for appellees.—Where the property is not entirely lost to the plaintiff, by destruction or otherwise, but is only partially so, the usual measure of damages is the difference between the value of the same before the injury and immediately after, and any reasonable expenses incurred, or value of time spent in preserving it, or restoring it.   Railway v. Ratliffe, 2 Willson's C. C., 683; Field on Damages, 782.

STEPHENS, ASSOCIATE JUSTICE.——Appellee, J. H. Mims, recovered judgment in the sum of five hundred dollars actual damages and two hundred and fifty dollars exemplary damages against appellants, W. J. and E. A. Baker, E. O. Lochausen, A. B. Paschal and S. R. Guthrie for a willful and malicious trespass upon his premises, consisting of a pasture in Midland County, with wind mills, tanks and troughs, owned and used by him at the time of the trespass (about June 22, 1893), for grazing and watering his own horses.

The evidence offered by appellee tended to show that on said 22d day of June, 1893, appellants Lochausen, Paschal and Guthrie, at the instance of the other appellants, tore down appellee's fence and drove their herd of cattle, twelve or thirteen hundred head, into his pasture, destroying the grass, injuring the turf, consuming the water and destroying the tanks and troughs.   It also tended to show that this destructive condition continued for at least three days, during which time appellee's horses (about one hundred head) were deprived of water, and driven into the wire fence, from which wounds and other injuries resulted.

The amount of damage assessed by the jury, if done by appellants, was amply sustained by the testimony.

Appellee's evidence also tended to show, especially by the character of the injuries done both to the premises and the horses, that the tres-

pass was willful and malicious, and that E. A. Baker, the wife of W. J. Baker, acted with her husband without constraint of coverture in instigating the trespass.

On the other hand, the testimony offered by appellants tended to rebut these inferences. For instance, it tended very strongly to show that Lochausen, Paschal and Guthrie had entered appellee's enclosure and watered their cattle only once, and that on June 21 and in a proper manner, and that early on June 22 they delivered the cattle to E. W. Ronnells, to whom they had sold them the preceding night. But we cannot reconcile this testimony with that of Victor Queen and other witnesses, who testified that the cattle were held there by appellant for at least three days in the manner first stated.

Though not in all respects satisfied with the verdict, we have finally concluded that the case is one of conflicting evidence, and, consequently, that we must adopt, perforce of the verdict, as our findings of fact, what the evidence favorable to appellee tended to prove, as above indicated.

This conclusion requires us to overrule the twenty-fifth and last assignment in the brief, which complains, upon three distinct grounds, of the court's refusal to grant a new trial.

The fifth paragraph of the charge directed the jury to measure the damage resulting from the destruction of the turf and injury to the tank and fence at the difference in the market value of the land before and after the trespass. To this feature of the charge the fifth error is assigned, upon the ground that damage to the tank and fence should be measured by what it would cost to repair them, and not by the difference in the value of the land, which is conceded to be the proper measure for injury to the turf.

The rule is thus correctly stated in 3 Sutherland on Damages, 373: "If the wrong consists in the destruction or removal of some addition, fixture or part of the premises, the loss may be estimated upon the diminution of the value of the premises, if any results; or upon the value of the part severed, considered either as a part of the premises, or detached; and that valuation should be adopted which will be most beneficial to the injured party; for he was entitled to the benefit of the premises intact, and to the value of any part separated."

Besides, it seems to us that the rule contended for is but the equivalent of that given in the charge, especially as applied to the facts of this case.

This paragraph of the charge further directed the jury to measure the damages done by causing four mares to slink their foals by the market value of the colts so lost, which the witnesses placed at twenty-five dollars each. This evidence was admitted over the objection that such damages were too remote and speculative.

The sixth and nineteenth assignments challenge, respectively, the correctness of these rulings, and must, we think, be sustained. The unborn colts could not in the nature of things have had a market value

apart from the mares carrying them, and the reduction of the market value of the mares by the premature loss of the colts constituted the amount of the damages.   It was so ruled in Railway v. Estill, 147 U. S., 590 (L. Ed., 292), citing Railway v. Fagan, 72 Texas, 127.

We have no means of determining what the lessened value of these four mares was, and hence cannot say that it amounted to one hundred dollars, the aggregate value of the foals lost, as given in the testimony objected to.   Unless, therefore, appellee will remit that amount of the verdict, this error will necessitate a reversal of the judgment.

The errors assigned to other portions of the charge are all overruled, because when the whole charge is considered, and read in the light of our conclusions of fact, the objections raised are no longer tenable.

The requested charge (No. 1) was properly refused, because it would have taken from the jury a controverted issue of fact.

The errors assigned to the rulings on demurrers are ignored, because, under repeated decisions of the appellate courts, they are not well assigned.

Upon a remittitur of one hundred dollars being entered within twenty days, the judgment will be affirmed as to the rest, with costs of the appeal taxed against appellee; otherwise reversed and remanded.

*Affirmed, upon remittitur entered.*